IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 13-21411-CIV-KING

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | **AMENDED COMPLAINT** |
| DR. LIANETTE CAMPOS-SACKLEY, | ) ) | |
| Plaintiff-Intervener, | ) ) | <u>JURY TRIAL DEMAND</u> |
| v. | ) ) | |
| BAPTIST HEALTH SOUTH FLORIDA, INC., and DOCTORS HOSPITAL, INC. | ) ) ) | |
| Defendants. | ) | |
| _____/ | | |

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA"),
42 U.S.C. §12101, *et seq.*, as amended by the Americans with Disabilities Act Amendments Act
of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat 3553 (2008) (codified as amended in
scattered sections of 42 U.S.C.), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a to
correct unlawful employment practices on the basis of disability and to provide appropriate relief
to Dr. Lianette Campos-Sackley ("Dr. Campos-Sackley"), who was adversely affected by such
practices.  As alleged with greater specificity below, Dr. Campos-Sackley was unlawfully
terminated by Defendant Baptist Health South Florida, Inc. and/or Defendant Doctors Hospital,
Inc. because she requested the reasonable accommodation of a schedule modification based on
her   disability,   epilepsy,   in   violation   of   her   rights   under   the   ADA.

<u>JURISDICTION AND VENUE</u>

1

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.     At all relevant times, Defendant Baptist Health South Florida, Inc. ("Baptist" or "Employer") and Defendant Doctors Hospital, Inc. ("Doctors Hospital" or "Employer"), Florida corporations, have continuously been doing business in the State of Florida and the City of Coral Gables, and have continuously had at least 15 employees.

5.     At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e (g) and (h).

6.     At all relevant times, Defendants have been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## CONDITIONS PRECEDENT

7.     More than thirty (30) days prior to the institution of this lawsuit, Dr. Campos-Sackley filed a charge with the Commission alleging violations of the ADA by Defendants Baptist and Doctors Hospital.

8.     Prior to the institution of this lawsuit, the Commission issued a Letter of Determination finding reasonable cause to believe that Dr. Campos-Sackley was denied a reasonable accommodation and discharged by Defendant Baptist and/or Defendant Doctors Hospital because of her disability.

9.     Prior to institution of this lawsuit, the Commission's representatives attempted to eliminate the unlawful employment practices alleged below and to effect voluntary compliance with the ADA through informal methods of conciliation, conference and persuasion within the meaning of Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

10.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

11.    Defendant Baptist is a non-profit health care organization in Florida that manages several hospitals, an outpatient facility and a heart institute.

12.    Defendant Baptist manages Defendant Doctors Hospital, which is one of its affiliated hospitals located in Coral Gables, Florida.

13.    Defendant Baptist operates exclusively for the benefit of and to perform the functions and purposes of its affiliates, including Doctors Hospital.

3

14.   All of the assets and earnings of Defendant Baptist are exclusively used to carry out the functions and purposes of its affiliates, including Doctors Hospital.

15.   Baptist has the right to perform and performs the following corporate functions on behalf of its affiliates, including Doctors Hospital:

a.   Approval of purchase, sale, transfer, mortgage or encumbrance of real property;

b.   Zoning and master facility planning and implementation of such plans;

c.   Providing human resource functions including, without limitation, development and implementation of personnel policies, employee benefit plans (including, but not limited to, pension plans and retirement matters), executive compensation, and health insurance plans;

d.   Purchasing insurance and managing insurance matters;

e.   Providing risk management functions;

f.   Providing audit functions (including selection of accountants and auditors); review of audited financial statements and audit plans, and direct supervision of internal audit functions;

g.   Developing and establishing budgets;

h.   Managing and overseeing financial operations and policies, including, but not limited to, investment policies, indebtedness, fmancial controls, and long range financial planning;

i.   Developing and implementing all strategic and long range plans;

j.   Providing information systems and managing information and data processing functions;

      k.  Public relations and marketing;

      l.  Charity care and community service programs;

      m. Developing and implementing management policies and other policies;

      n.  Providing and contracting for legal services;

      o.  Borrowing or incurring indebtedness;

      p.  Contracting with third party payors; and

      q.  Implementing and operating the Corporate Compliance Program.

16.  Defendant Baptist employs and appoints the Chief Executive Officer ("CEO") of Doctors Hospital and Doctors Hospital's senior financial officer, and delegates to the CEO the power to hire and fire employees, to determine compensation and benefit levels for officers and employees, to designate job tasks and responsibilities and to terminate employment.

17.  Doctor's Hospital hosts the Gamma Knife Program which treats brain tumors and other neurological conditions with gamma rays without incision or physical entry into the brain on an outpatient basis.

18.  Dr. Aizik Wolf was the Director of the Gamma Knife Program during the relevant time period.

19.  Dr. Campos-Sackley has a physical impairment, epilepsy, which substantially limits her in the major life activity of neurological functioning.

20.  As of August 2010, Dr. Campos-Sackley was a licensed doctor in the State of Utah.

21.  In August 2010, Dr. Campos-Sackley met with Dr. Wolf regarding employment as a General Medicine Practitioner in the Doctor's Hospital Gamma Knife Program in Coral Gables, Florida.

22.   During their initial meeting, Dr. Campos-Sackley disclosed her disability, epilepsy, to Dr. Wolf and shared her disability-related limitations with him.

23.   Specifically, Dr. Campos-Sackley told Dr. Wolf that her condition, while stable, would be exacerbated if she didn't receive an adequate amount of sleep and that, as a result, she could not work in excess of eight (8) hours per workday.

24.   Also, Dr. Campos-Sackley informed Dr. Wolf that she could come in to work early as long as she left early, so as not to interrupt her rest patterns and avoid the onset of her seizures.

25.   Dr. Wolf told Dr. Campos-Sackley that he understood her limitations and recommended that she be hired for the position upon her receipt of medical licensure in the State of Florida.

26.   Later that month, Dr. Campos-Sackley met with Doctor's Hospital Assistant Vice President of Surgical Specialty Services, Dr. Paul Mungo, and Chief Executive Office, Nelson Lazo, for a second interview.

27.   Dr. Campos-Sackley became a licensed medical doctor in Florida in or about October, 2010.

28.   On November 18, 2010, Defendants offered Dr. Campos-Sackley a position as a General Medicine Practitioner in the Gamma Knife Program at Doctor's Hospital, which she accepted, and she immediately began working under the supervision of Dr. Wolf.

29.   As a General Medicine Practitioner, Dr. Campos-Sackley worked closely with Dr. Wolf as his assistant.

6

30. Dr. Campos-Sackley's job duties included customer service, assisting and/or attending to patients including attendance for procedures, evaluations or interventions after discussion, documenting daily  medical records, communicating with staff, and administration, assisting with the formulation of plans of care,  acting as a member of the interdisciplinary health care team to promote safe care, treatment and service, participating in staff and committee meetings, serving as a readily available resource to hospital staff and writing and dispensing prescriptions.

31. Beginning on or about November 22, 2010, Dr. Campos-Sackley began her employment with Defendants and successfully performed all of the essential functions of her position.  From the beginning, although able to perform all of the essential functions of her position during the eight (8) hour workday,  Dr. Campos-Sackley was required to work in excess of the eight (8) hour workday that she agreed to work

32. Depending on the procedures Dr. Wolf was scheduled to perform each day, Dr. Campos-Sackley's daily schedule could start as early as 5:00 a.m. and would end at about 5:00 p.m.

33.  On Mondays and Wednesdays, Dr. Campos-Sackley was required to work from 7:30 a.m. to 5:00 p.m. if no surgery was scheduled and from 6:00 a.m. to 5:00 p.m. if there was a surgery scheduled.

34.  Dr. Wolf generally performed specialized Gamma surgery on Tuesdays and Thursdays (Gamma days) of the work week.

35.  On Gamma days, Dr. Wolf began at 5:30 a.m.  Dr. Campos-Sackley was required by Dr. Wolf to arrive a half hour earlier than his scheduled arrival to help the nurses set up for surgery and complete paperwork.   In discussions with Dr. Campos-Sackley prior to her

commencing employment, Dr. Wolf assured her that on the Gamma surgery days, she could leave work around 2:00 or 3:00 p.m.

36.   While Dr. Wolf's scheduled Gamma surgeries were usually complete by 3:00 p.m., he did not leave by 3:00 p.m. on Tuesdays or Thursdays and required Dr. Campos-Sackley to remain available to him at the facility although her job duties and responsibilities were completed.

37.   Dr. Campos-Sackley was required to wait until Dr. Wolf granted her permission to leave for the day, each work day.

38.   On Fridays, Dr. Campos-Sackley was required to work from 6:00 a.m. to 5:00 p.m. as this was typically the day reserved for regular surgeries although she could have performed all the essential functions of her position during an eight (8) hour workday.

39.   Dr. Campos-Sackley occasionally worked on Saturdays if necessary.   On those days she would provide follow-up visits to Dr. Wolf's patients.

40.   As a result, Dr. Campos-Sackley was repeatedly required to work in excess of eight (8) hours per day.

41.   As a result of being repeatedly required to work in excess of eight (8) hours per workday, Dr. Campos-Sackley became fatigued which resulted in the return of her epileptic seizure activity.

42.   Immediately upon the return of her seizures, Dr. Campos-Sackley contacted her treating physician, Dr. Ramsey and he adjusted her medication in an attempt to stop the seizures. The seizures continued.

43.   As a result, she visited another neurologist, Dr. Enrique Carrazana on December 22, 2010 and had an EEG exam done on January 13, 2011 to chart the severity of her epilepsy.

44.   Based upon medical advice, on or about January 10, 2010, Dr. Campos-Sackley informed Dr. Mungo that she needed to return to the eight (8) hour per workday schedule discussed and agreed to during the initial hiring process. She reiterated to Dr. Mungo her concerns about her health and her need for a minimum of eight hours sleep per night which required an eight hour work day for her.

45.   Dr. Mungo told her that he would speak with Dr. Wolf and that, if she were to be terminated from her position, it would not be performance based but more likely "based on her disability."

46.   Having not heard from Dr. Mungo, on January 17, 2011, Dr. Campos-Sackley requested another meeting with Dr. Mungo, who agreed to meet with her along with Estelle Joakimsen, the Manager of the Surgery Business Office, to address Dr. Campos-Sackley's request.

47.   During the meeting, Dr. Campos-Sackley explained her eight (8) hour work day limitation once again and requested the reasonable accommodation of a modified schedule which would again limit her workday to 8 hours per day.  Dr. Mungo and Ms. Joakimsen indicated they would discuss Dr. Campos-Sackley's request with Dr. Wolf.

48.   Ms. Joakimsen asked Dr. Campos-Sackley if she had to choose between working the difficult schedule to the detriment of her health or losing her job, which would she choose.

49.   On January 19, 2011, Dr. Campos-Sackley was instructed to report to the Employee Health office where she was told she could not return to work until she received clearance to work from her treating neurologist and was provided forms to be completed by her treating physician, Dr. Ramsay, regarding her condition.  At that time, she was also told to report to Dr. Mungo's office.

50.   When Dr. Campos-Sackley reported to Dr. Mungo's office on January 19, 2011, she was informed by Dr. Mungo and Ms. Joakimsen that Defendants would not reasonably accommodate her by providing her with a modified schedule comprised of eight (8) hour workdays and that she was terminated.

51.   Dr. Mungo suggested that Campos-Sackley meet with Defendants' Integrated Disability Management Case Manager, Alina Gonzalez, in the hope that she might find another position for her.

52.   Upon meeting with Ms. Gonzalez, Dr. Campos-Sackley reviewed the essential job functions as required for the position of General Medicine Practitioner and indicated that she could perform each of them.

53.   Dr. Campos-Sackley's physician, Dr. Ramsay, provided Defendants with a Physical Capacity Evaluation, as requested, which indicated that Dr. Campos-Sackley could perform all of the essential job functions with a modified schedule limiting her   to a work day of eight (8) hours per day.

54.   Defendants refused to reasonably accommodate Dr. Campos-Sackley and instead terminated her employment.

55.   As a result, Dr. Campos-Sackley has suffered damages.

<u>STATEMENT OF CLAIMS</u>

56.   Plaintiff fully incorporates paragraphs eleven (11) through fifty-five (55) as if fully restated herein.

57.   Defendant Baptist Health South Florida, Inc. and/or Defendant Doctors Hospital, Inc. engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA,

42 U.S.C. § 12112, as amended, when they refused to make a reasonable accommodation for Dr. Campos-Sackley and instead terminated her employment.

58.   The effect of the practices complained of in paragraphs eleven (11) to fifty-five (55) above has been to deprive Dr. Campos-Sackley of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disability.

59.   The unlawful employment practices complained of in paragraphs eleven (11) to fifty-five (55) above were intentional.

60.   The unlawful employment practices complained of in paragraphs eleven (11) to fifty-five (55) above were done with malice or with reckless indifference to the federally protected rights of Dr. Campos-Sackley.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Defendant Baptist Health South Florida and/or Defendant Doctors Hospital, Inc., Inc., their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from discriminating against qualified employees with disabilities that seek reasonable accommodations;

B.   Order Defendant Baptist Health South Florida, Inc. and/or Defendant Doctors Hospital, Inc. to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;

C.   Order Defendant Baptist Health South Florida, Inc. and/or Defendant Doctors Hospital, Inc. to make whole Dr. Campos-Sackley, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary

to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or in lieu thereof, front pay of Dr. Campos-Sackley;

D.   Order Defendant Baptist Health South Florida, Inc. and/or Defendant Doctors Hospital, Inc. to make whole Dr. Campos-Sackley by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs eleven (11) to fifty-five (55) above, including but not limited to job search expenses and medical expenses, in amounts to be determined at trial;

E.   Order Defendant Baptist Health South Florida, Inc. and/or Defendant Doctors Hospital, Inc. to make whole Dr. Campos-Sackley by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs eleven (11) to fifty-five (55) above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F.   Order Defendant Baptist Health South Florida, Inc. and/or Defendant Doctors Hospital, Inc. to pay Dr. Campos-Sackley punitive damages for its malicious and reckless conduct, as described in paragraphs eleven (11) to fifty-five (55) above, in amounts to be determined at trial;

G.   Grant such further relief as the Court deems necessary and proper in the public interest; and

H.   Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: December 16, 2013.

Respectfully submitted,

P. DAVID LOPEZ
 General Counsel
JAMES L. LEE
Deputy General Counsel
GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment Opportunity
Commission
131 M Street, N.E.
Washington, D.C. 20507

ROBERT E. WEISBERG
Regional Attorney


**/s/ Kimberly A. McCoy Cruz**
KIMBERLY A. McCOY-CRUZ
Supervisory Trial Attorney
Florida Bar No. 153729
U.S. Equal Employment Opportunity
Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: 305-808-1783
Fax: 305-808-1835
aarrin.golson@eeoc.gov


AARRIN GOLSON
Trial Attorney
Florida Bar No. 892491

U.S. Equal Employment Opportunity
Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: 305-808-1783
Fax: 305-808-1835
aarrin.golson@eeoc.gov

13